IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 4, 2006 Session

NORTHEAST KNOX UTILITY DISTRICT v. STANFORT
CONSTRUCTION COMPANY, SOUTHERN CONSTRUCTORS, INC., and
AMERICAN ARBITRATION ASSOCIATION, INC.,
STANFORT CONSTRUCTION COMPANY C v. NORTHEAST KNOX
UTILITY DISTRICT, ROBERT G. CAMPBELL & ASSOCIATES, LP., and
RICHARD PHILLIPS

Direct Appeal from the Circuit Court for Knox County
No.  93-93-03     Hon. Wheeler A. Rosembalm, Circuit Judge

No. E2005-01284-COA-R3-CV  - FILED MAY 16, 2006

The Trial Court granted defendants summary judgment on the grounds the statute of limitations had run on plaintiff's claims.  On appeal, we vacate and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which SHARON G. LEE, J., joined, and CHARLES D. SUSANO, JR., J., filed a separate dissenting opinion.

Andrew R. Tillman and Joshua R. Walker, Knoxville, Tennessee, for counter-plaintiff/appellant, Stanfort Construction Company.

John M. Neal, Knoxville, Tennessee, for appellee, Richard Phillips.

Robert H. Green, Knoxville, Tennessee, for third party defendant/appellee, Robert G. Campbell & Associates, LP.

**OPINION**

In this action, defendants were granted summary judgment on the grounds that the statute of limitations had run on plaintiff's cause of action.

**BACKGROUND**

On April 9, 1999, Southern Constructors, Inc. ("Southern") and Northeast Knox Utility District ("NEKUD") entered into a contract for the construction of a raw water intake on the Holston River in Knox County, Tennessee (the "Project"). Richard Phillips, NEKUD's general manager, signed the contract on the District's behalf, and the contract documents designated Robert G. Campbell & Associates L.P. ("Campbell") as the Project's engineer. The contract documents included an engineering report prepared by S&ME, an engineering services firm, which had drilled three test bores at the proposed location of the Project. These test results indicated rock at 16.5 feet, 17 feet, and 16.2 feet.
.

On May 6, 1999, Southern subcontracted the excavation portion of the Project to Stanfort Construction Co. ("Stanfort"). In June 1999, Stanfort's excavation work exposed rock six feet higher than shown in the boring report. In the summer or early fall of 1999, Stanfort demanded extra compensation for excavating the additional rock, pursuant to Articles 4.2.5 and 4.2.6 of the Contract.[1]

Southern pursued the demand on Stanfort's behalf and Campbell sent a letter to Southern dated July 27, 1999 which states, "We understand that you reserve the right to file a claim for additional rock excavation, as provided by the contract documents." Another letter sent by Phillips to Southern and dated October 7, 1999 states, "Your claim for compensation for extra rock excavation is acknowledged and is being evaluated. No determination has been made as of this date. There is no contract requirement to resolve your claim, prior to the work being executed."

Stanfort completed the excavation on November 17, 1999, and on January 13, 2000,

---

[1]4.2.5. *Possible Document Change*: If ENGINEER concludes that there is a material error in the Contract Documents or that because of newly discovered conditions a change in the Contract Documents is required, a Work Directive Change or a Change Order will be issued as provided in Article 10 to reflect and document the consequences of the inaccuracy or difference.

4.2.6. *Possible Price and Time Adjustments*: In each such case, an increase or decrease in the Contract Price or an extension or shortening of the Contract time, or any combination thereof, will be allowable to the extent that they are attributable to any such inaccuracy or difference. If OWNER and CONTRACTOR are unable to agree as to the amount or length thereof, a claim may be made therefor as provided in Articles 11 and 12.

Terry Fortner, Stanfort's principal, wrote a letter to NEKUD's general contractor, Southern, detailing the difficulties Stanfort experienced during the excavation project and listing over $83,000.00 in specific extra expenses incurred by Stanfort as a result of the incorrect borings and inaccurate bid documents. Stanfort completed all work related to the Project in the spring of 2000, and had not received any additional compensation. According to Terry Fortner, in November 2000 Stanfort first learned that NEKUD and Southern closed out the contract without granting Stanfort its claim for additional compensation.

On December 20, 2000, Stanfort filed a demand for arbitration against NEKUD and Southern. Stanfort claimed that it had not been fully paid for its work on the Project, but on August 24, 2001, NEKUD filed a Complaint against Stanfort, Southern, and the AAA in the Chancery Court of Knox County, seeking an injunction barring Stanfort and the AAA from proceeding with arbitration with NEKUD as a party. Stanfort filed a Counterclaim against NEKUD's and a Cross-Complaint against Southern, requesting $128,803.00 in damages plus interest and attorney's fees. Stanfort filed an Amended Answer and Counter-Claim, and deleted the Cross-Claim against Southern.

On April 8, 2003, Stanfort moved to file an Amended Counter-Complaint and to Add Parties, which Motion the Circuit Court granted on April 11, 2003. Campbell and Phillips were added as parties and Stanfort charged that Campbell and Phillips engaged in reckless or negligent misrepresentation and that all three counter-defendants engaged in fraudulent concealment.

NEKUD and Phillips filed a Motion for Summary Judgment on January 21, 2004, arguing that Stanfort could not succeed under its enumerated causes of action because NEKUD was immune under the GTLA and Stanfort could not satisfy the requirement of justifiable reliance. The Motion was granted as to NEKUD, but denied as to Phillips. Phillips then filed a Motion for Summary Judgment arguing that Stanfort filed suit after the expiration of the applicable statute of limitations, Tenn. Code Ann. § 28-3-105. Stanfort responded by arguing that Phillips did not plead the statute of limitations in his Answer as required by Tenn. R. Civ. P. 8.03, but Phillips then filed a Motion to add the defense of statute of limitations, which was granted by the Court, who then granted Phillips' Motion for Summary Judgment.

On March 15, 2005, Campbell filed a motion seeking to add the statute of limitations, along with a Motion for Summary Judgment. The Trial Court allowed the Amendment to Campbell's Answer, and granted Campbell's Motion for Summary Judgment on the grounds the statute of limitations had run.

These issues are presented on appeal:

1.      Whether Mr. Phillips and Campbell waived the defense of the statue of limitations when they failed to include it in their Answers.

2.      Whether there was an issue of material fact as to when Stanfort's cause of

action against Mr. Phillips and Campbell accrued.

3.     Whether Stanfort's Second Amended Counter-Complaint relates back to the date of its original Counter-Complaint.

## DISCUSSION OF THE ISSUES

"The standard of review of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). The appellate court's "only task in deciding a motion for summary judgment is to determine whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* When making this determination, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000).

Stanfort initially argues that Phillips and Campbell waived the statute of limitations defense because they did not raise the issue until after extensive discovery had been completed. Stanfort urges that the Trial Court erred in granting the Amendment, since the issue to amend was not raised until Terry Fortner had given his discovery depositions, without advance notice of this defense.

The granting or denying of a motion for summary judgment is within the sound discretion of the trial court. *Merriman v. Smith,* 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). The factor of primary importance in reviewing exercise of discretion is the amendment's potential prejudicial effect on the opposing party. *Hardcastle v. Harris*, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004).

Although the delay between the original filing and subsequent amendment of Philips' and Campbell's Answers was roughly 16 and 13 months respectively, this was not an undue delay considering that there was an 19-month delay between the filing of Stanfort's original Counter-Claim and the amendment which added Mr. Phillips and Campbell as parties. Stanfort also had sufficient notice to respond to the limitations defense, as the first hearing on the issue was approximately seven weeks after the issue was first raised. Stanfort made no allegation that Phillips and Campbell acted in bad faith, and we affirm the Trial Court on this issue. Moreover, there was no undue prejudice to Stanfort. Although Stanfort argues that allowing the amendments was unfair because Stanfort had no notice of the defense during the deposition of Terry Fortner, no explanation is given how that constituted undue prejudice. *See, Garthright v. First Tenn. Bank of Memphis*, 728 S.W.2d 7, 9 (Tenn. Ct. App. 1986). We find no abuse of discretion by the Trial Court in allowing the amendments.

The applicable statute of limitations in this case is Code Ann. § 28-3-105, which provides that actions for injuries to personal or real property shall be commenced within three years

from the accrual of the cause of action. "A cause of action accrues for either intentional or negligent misrepresentation when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp. v. State of Tenn.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999); *accord City State Bank v. Dean Witter Reynolds, Inc.,* 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996). The statute is tolled only during the period when the plaintiff has no actual or constructive knowledge of the alleged wrong. *City State Bank*, 948 S.W.2d at 735.

Phillips and Campbell argue that Stanfort's cause of action is barred because it accrued no later than January 13, 2000, more than three years prior to the Second Amended Counter-Complaint. On that date, Fortner wrote NEKUD's general contractor detailing the difficulties Stanfort experienced during the excavation project. Fortner noted in the letter that the actual conditions at the Project site were not as represented in the bid documents. He also lists over $83,000.00 in specific extra expenses incurred by Stanfort as a result of the incorrect borings and inaccurate bid documents. Fortner, in his deposition, testified that as of the day he wrote the letter, he felt that the bid documents and contract documents had not properly represented actual site conditions. Phillips and Campbell argue that this letter and the testimony establish Fortner's actual knowledge of Stanfort's injury; and the cause of action accrued as of that date.

Stanfort counters that any injury was only speculative until Southern closed the Project with NEKUD and denied Stanfort's claim for extra compensation in November 2000. Stanfort argues that until this point there existed the possibility that NEKUD would compensate Stanfort for the extra expenses incurred as a result of the alleged misrepresentations, and relies on *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998), which held that the injury element of the discovery rule is not satisfied if the injury "is contingent upon a third party's actions or amounts to a mere possibility" *Id.* at 532. However, this principle rebuts rather than supports Stanfort's argument. The principle delays accrual when a defendant's conduct creates circumstances that could injure the plaintiff upon the occurrence of some future event. It does not delay accrual when a defendant's conduct creates a present injury that might be remedied by a future event. *See, Security Bank & Trust Co. of Ponca City, Okl. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983). In that case, the Supreme Court rejected an argument similar to Stanfort's.

The January 13, 2000 letter, listed over $83,000.00 in specific extra expenses incurred by Stanfort as a result of the alleged misrepresentations. At the time of this letter, there may have been some possibility that Stanfort might recover some or all of the expenses in the future, but "[a] plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong." *Security Bank & Trust Co. Of Ponca City, Okl.,* 673 S.W.2d at 864-65. Based on the foregoing, Stanfort had sufficient actual knowledge of its injury no later than January 13, 2000.

Stanfort also argues that whether it had actual knowledge of its injury on January 13, 200, its cause of action did not accrue prior to November 2000, because prior to that time it had no knowledge that the defendants' alleged misrepresentations were the result of conscious or reckless

deceit, and that defendants had fraudulently concealed their true motivations. A plaintiff's lack of knowledge regarding the true nature of a defendant's alleged tortious conduct, however, is not sufficient to implicate the discovery rule and delay accrual. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144-45 (Tenn. 2001).

Accrual did not require Stanfort to actually know the specific type of legal claim it had, and its lack of knowledge concerning the specific nature of the defendants' alleged tortious conduct is irrelevant for purposes of determining when the cause of action accrued. The January 13, 2000 letter and Fortner's testimony establishes Stanfort had actual knowledge of its injury and the cause no later than January 13, 2000. *John Kohl & Co. P.C., v. Dearborn & Ewing*, 977 S.W.2d 532-33 (Tenn. 1998).

Next, Stanfort argues that Phillips and Campbell led it to believe that they were giving Stanfort's claims for extra compensation due consideration, and Stanfort could not know until sometime after the job closeout that it would be left injured. It buttresses its argument by citing the letter dated July 27, 1999 and signed by Campbell which states, "We understand that you reserve the right to file a claim for additional rock excavation, as provided by the contract documents.", and a second letter dated October 7, 1999 signed by Phillips which states, "Your claim for compensation for extra rock excavation is acknowledged and is being evaluated. No determination has been made as of this date. There is no contract requirement to resolve your claim, prior to the work being executed." Fortner's affidavit states that he received repeated assurances that the general contractor was pursuing his claim for extra compensation.

Stanfort argues that, in reliance on these statements, it delayed filing suit against Phillips and Campbell, but Stanfort never uses the phrase "equitable estoppel." However, Stanfort discussed the factual basis of this theory before the Trial Court and as *Fahrner* teaches, we are required to consider not only the discovery rule, but also "whether the related doctrine of equitable estoppel saves this action from the bar of the statute of limitations." *Fahrner*, 48 S.W.3d 141, 143 & n.1.

The doctrine of "equitable estoppel"[2] tolls the running of the statute of limitations

---

[2]The discovery rule and equitable estoppel are different concepts. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001). The discovery rule tolls the statute of limitations when plaintiffs do not have actual or constructive knowledge of their injuries. *Id.* In equitable estoppel cases, the plaintiff has either actual or constructive knowledge of an injury, but the defendant's subsequent conduct prevents the plaintiff from filing suit in time. *Id.* Thus, the discovery rule delays both accrual of the cause of action and the expiration of the limitations period, while equitable estoppel delays only the expiration of the limitations period. "The doctrines may have the same effect, in that a plaintiff who successfully invokes either one may proceed with his lawsuit, but they are theoretically distinct: a plaintiff invoking the discovery rule asks the court to properly apply the statute of limitations; a plaintiff invoking equitable estoppel, in effect, asks the court to waive it." *Id.*

when, in reliance on a statement or act by the defendant during the applicable limitations period, the plaintiff fails to file suit within the limitations period. *Id.* at 145; *Hardcastle* at 85. "Statements or conduct that support an estoppel claim include representations, made prior to the expiration of the limitations period, that the defendant either would not assert a statute of limitations defense or that the dispute would be amicably resolved without filing suit." *Ingram v. Earthman*, 993 S.W.2d 611, 633 (Tenn. Ct. App. 1998). Successful assertion of the doctrine requires that the plaintiff show that (1) the defendant knew or should have known that its conduct would induce the plaintiff to delay filing suit, (2) the plaintiff's reliance on this conduct was reasonable, and (3) the plaintiff's delay was not unreasonable or due to lack of diligence. *Hardcastle*, at 85.

We are required to review the evidence in summary judgment cases in the light most favorable to Stanfort, and draw reasonable inferences in its favor. *Staples,* at 89. Applying this standard to the above mentioned letters and affidavit, their reasonable inferences support more than one reasonable conclusion. Accordingly, a genuine issue of material fact exists as to whether Phillips and Campbell are equitably estopped from asserting the statute of limitations.[3] Therefore, summary judgment was inappropriate. *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999) (stating that summary judgment is only appropriate when the facts lead to only one reasonable conclusion); *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 347 (Tenn. Ct. App. 1999) (stating that summary judgment must be overruled "if there is doubt as to whether or not . . . [a] genuine issue remains for trial").

Stanfort raised yet another issue in its brief, i.e., "the Second Amended Counter-Complaint related back to the date of its original Counter-Complaint, and argues that its mistake 'was not realizing that NIKUD was an immune entity, and that the individuals who made the representations were the real necessary parties.'"[4] Our Supreme Court rejected a similar argument in *Sallee v. Barrett,* 171 S.W.3d 822 (Tenn. 2005). This issue is without merit.

For the foregoing reasons, we vacate the Summary Judgment granted by the Trial Court on the issue of whether Phillips and Campbell are equitably estopped from asserting the statute of limitations. If the Trial Court finds that Phillips and Campbell are not equitably estopped from asserting the statue of limitations, the statute of limitations commenced on January 13, 2000, and the

---

[3]Where facts constituting an estoppel are undisputed, a question of estoppel becomes one of law, but where facts constituting an estoppel are disputed, the question of estoppel is one of fact. *Consol Coal Co. V. O'Brien*, 3 Higgins 252 (Tenn. Civ. App. 1913).

[4]Stanfort's Second Amended Counter-Complaint does not relate back to any prior pleading. Prior to the filing this Counter-Complaint, Stanfort knew the identities of Mr. Phillips and Campbell and their involvement in the representations at issue. Despite this knowledge, Stanfort omitted them as parties in the First Amended Counter-Complaint. Although Stanfort made this omission due to its belief that NEKUD could be held liable for Mr. Phillips' and Campbell's alleged misrepresentations, this does not constitute a "mistake" for purposes of Rule 15.03.

statute of limitations bars Stanfort's claims because they are not protected by Tenn. R. Civ. P. 15.03.

The cause is remanded with the cost of the appeal assessed one-half to Stanfort Construction Company and one-half to the defendants, Richard Phillips and Robert G. Campbell & Associates, LP.

_____
HERSCHEL PICKENS FRANKS, P.J.